UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | SA-17-CR-391-XR |
| | § | |
| DEVANTE FENNELL | § | |
| | § | |

# ORDER

The Defendant is charged in this case with violating 18 U.S.C. § 922(g) (felon in possession of a firearm). The Defendant has filed a motion to suppress and a motion requesting additional discovery (docket no. 39).

**BACKGROUND**

In September 2017, due to an outbreak of violence on the east side of San Antonio, the San Antonio Police Department increased patrols in the area. SAPD Officer Raphael Medel and his partner Sergio Villanueva were assigned to patrol the area the evening of September 24, 2017.

Initially the officers encountered Mr. Fennell when he was seen jaywalking in the area. During the March 21, 2018 hearing on the motion to suppress, the officers testified that they "contacted" him, they ran his name and date of birth for outstanding warrants, became aware that he had outstanding traffic warrants, but inasmuch as they were looking for individuals associated with the recent "shootings", they elected to merely "cut him loose" rather than arrest him based on the traffic warrants.

Somewhere between 13 minutes and one hour later, the officers saw a vehicle running a stop sign. The vehicle was pulled over and the driver was asked for his driver's license. Officer Medel testified he did not know who was in the vehicle when it was pulled over. Officer Medel also testified

that when he approached the driver he did not recognize that individual as the person he previously stopped for jaywalking.

Mr. Fennell was asked to produce a driver's license and stated he did not have one. Officer Medel testified that he smelled the "strong odor" of marijuana coming from the car. The video in this case confirms Officer Medel telling the driver that he smelled marijuana.[1] Mr. Fennell was asked to get out of the vehicle and was immediately handcuffed and placed under arrest. A subsequent search of Mr. Fennell and the vehicle found no marijuana. A loaded Glock semi-automatic pistol was found underneath the floor board of the front passenger side of the vehicle. Mr. Fennell was the sole occupant of the vehicle. After the weapon was found the officers requested that a CSI unit and a K9 unit be dispatched to the scene. No other weapons were found and no drugs were found.

Counsel for Defendant implied during the suppression hearing that during the initial "pedestrian stop" Mr. Fennell was handcuffed and Officer Villanueva reached into Mr. Fennell's pants pockets, pulled out his keys, and pushed on one of the car key buttons to determine which car might respond. Officer Medel testified that he did not recall anything from the pedestrian stop interaction because he does "hundreds of pedestrian stops." Officer Villanueva likewise testified that he did not remember any details of the pedestrian stop.

Defendant also challenges the basis for the vehicle stop arguing that he did make a stop at the intersection. Defendant implies that the officers have intentionally misrepresented why they stopped the vehicle and implies that the officers must have been aware that Mr. Fennell was the driver. Officer Villanueva testified that he and Officer Medel "did not follow Mr. Fennell after the pedestrian stop and before [they] encountered him later that evening on the traffic stop." Officer Villanueva testified that

---

[1] The Defendant implies that the officers are lying about smelling marijuana coming from the vehicle because no marijuana was found inside the vehicle or on Defendant's person, there was fresh laundry in the vehicle along with Gain detergent and fabric softener, and the car had an air freshener device.

he was aware prior to the vehicle stop that at some point in time "Bexar County" (ostensibly Bexar County deputy sheriffs) had stopped Mr. Fennell earlier and had located money on his person.

At the hearing Defense Counsel informed the Court that she had earlier made a request that the San Antonio Police Department produce any records or audio/visual recordings of the "pedestrian stop" in this case. The U.S. Attorney's Office responded that the request had been relayed to SAPD, but that because there was no arrest of the Defendant at that time they had no file number to initiate a search. The Court then enquired as to whether body cam or dash cam recordings could be located by officer, day and time. SAPD agreed to conduct another search. A "CFS" report was found, as well as body cam and dash cam and those have been produced to defense counsel.

In response to this new production the Defendant has filed an amended motion to suppress. In the amended motion the Defendant argues: (1) that the "pedestrian stop" was illegal and all fruits of that illegal search should be suppressed, (2) Mr. Fennell did not commit a traffic violation because he stopped in accordance with Texas Transportation Code § 545.010, and (3) there was no probable cause to conduct a search of the car.

**Analysis**

A police officer has probable cause to stop an individual who he observes as illegally jaywalking. *Hernandez v. City of Lubbock, Tex.*, 634 F. App'x 119, 122 (5th Cir. 2015).[2] The City of San Antonio prohibits a pedestrian from crossing a roadway other than in a crosswalk. Sec. 19-80. Crosswalk means: "(1) That part of a roadway at an intersection included within the connections of the lateral lines of the

---

[2] See also *Utah v. Strieff*, 136 S. Ct. 2056, 2069, 195 L. Ed. 2d 400 (2016)(J. Sotomayor dissenting)("Although many Americans have been stopped for speeding or jaywalking, few may realize how degrading a stop can be when the officer is looking for more. This Court has allowed an officer to stop you for whatever reason he wants—so long as he can point to a pretextual justification after the fact.").

sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable roadway; (2) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surfaces." Sec. 19-1. See also Tex. Transp. Code §§ 552.005 and .009. Accordingly, a person may be stopped for jaywalking an issued a citation.

The question in this case is whether an officer can conduct an investigative detention and pat down frisk just because he has seen someone jaywalking.[3] "An officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. Reasonable suspicion cannot be reduced to a neat set of legal rules, but must be determined by looking to the totality of the circumstances—the whole picture." *United States v. Jordan*, 232 F.3d 447, 448–49 (5th Cir. 2000) (internal citations omitted).

"After making a proper *Terry* stop, the police are within their constitutional authority to pat down a party and to handcuff [an individual] for their personal safety even if probable cause to arrest is lacking." *Id*. at 449. Even considering the high-crime character of the area in September 2017, after the pat down search of Mr. Fennell revealed no weapons, there was no justification for the officers to take the car keys, press down on one of the buttons, and attempt to discover if his car was in the vicinity.

The Defendant also complains of being placed in the back of the patrol vehicle for about twenty minutes. Once Defendant's name and date of birth were obtained, the officers ran a warrant check, and it was discovered that Mr. Fennell had outstanding traffic warrants. Mr. Fennell could have been

---

[3] If Mr. Fennell was not seen jaywalking, "mere presence in a high crime area, without more, will not create reasonable suspicion for a *Terry* stop and frisk." *United States v. Tuggle*, 284 F. App'x 218, 224 (5th Cir. 2008).

4

arrested at that point, but the officers released him. Accordingly, there was no impermissible police action by detaining Mr. Fennell long enough to determine if he had any outstanding warrant and whether they would release him.

Defendant contends that the retrieval of his key was an illegal search, and that the officer's pressing of the key's fob and discovery of Plaintiff's vehicle was fruit of the poisonous tree that requires suppression. Further, the Defendant argues that since the officers stopped the same car they discovered by clicking on the key fob, the eventual discovery of the weapon in that car must be suppressed.

"Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search …must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *United States v. Beene*, 818 F.3d 157, 165 (5th Cir.), cert. denied, 137 S. Ct. 113, 196 L. Ed. 2d 91 (2016).

The attenuation doctrine "evaluates the causal link between the government's unlawful act and the discovery of evidence. Evidence may be sufficiently attenuated from the Fourth Amendment violation even where the violation is a but-for cause of the discovery of the evidence. The key question is whether the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Mendez*, No. 16-41057, 2018 WL 1444021, at *4 (5th Cir. Mar. 23, 2018) (internal citations omitted).

Missing from the Defendant's argument is any evidence that the police officers actually followed Mr. Fennell after releasing him from the pedestrian stop. The officers deny doing so. Mr. Fennell argues that these two officers had previously come into contact with him (6 to 10 encounters) prior to September 24.

5

To support his position that the officers' rendition is untruthful in this case, Defendant seeks the production of the following: (1) evidence from the SAPD of all encounters between Officers Medel and Villanueva and Fennell; (2) disciplinary records of Officers Medel and Villanueva; and (3) "Statistics and data on the field contact and traffic stops conducted on the Eastside by Officers Medel and Villanueva and the race data involving those stops for both and/or each other."

This motion for discovery is granted in part and denied in part. The Government is ordered to produce to the Defendant the following:

1. Audio and video recordings and records of all 2017 encounters between Officers Medel and/or Villanueva and Fennell.

2. Any records from 2012 to the present that indicate Officers Medel and Villanueva have been disciplined as a result of how they interacted with a pedestrian.

3. Audio and video recordings and records from September 24, 2017 that relate to the identity of Fennell's vehicle, whether the officers were following Fennell's vehicle, whether they stopped Fennell's vehicle knowing he was the driver, whether they had stopped the vehicle for any reason other than running the stop sign, and whether the officers doubted they had smelled marijuana emitting from the vehicle.

Otherwise the remainder of the Defendant's request is overly broad, vague or seeks documents that are not relevant. The Court will continue the hearing on the motion to suppress on April 16, 2018 at 1:30 p.m. The Government is ordered to produce the above documents to the Defendant no later than April 13.

SIGNED this 5th day of April, 2018.

_____
XAVIER RODRIGUEZ